Van* Voorhis, J.
(dissenting). The People have appealed from the reversal by the Court of Special Sessions, Appellate Part, of a conviction of defendant in Magistrates’ Court of violating rule 14.4 of the Rules and Regulations of the Department of Air Pollution Control adopted pursuant to chapter 47 of the Administrative Code of the City of New York. Specifically the charge is that defendant sold bituminous coal at the premises known as 158 East 100th Street for consumption in the hand-fired fuel burning equipment, having a volatile content of 31.44% against the mandate of rule 14.3.2 limiting the volatile content to not more than 24% for this purpose.
The reversal by Special Sessions was on the ground that
The People failed to make out a prima facie case in that the Department of Air Pollution Control did not meet its own standards and procedures in making the tests.”
In other words, according to the standards and procedures prescribed for the purposes of the rule which defendant is charged with having violated, the sample of coal taken for analysis was not established to have been representative of the volatile content of the bulk of this delivery of coal by defendant at this address.
*47 This prosecution is not for the emission of smoke of prohibited density. It has nothing to do with sampling for the, purposes of the United States Bureau of Mines. The information charges the delivery of coal with an excessive volatile content as defined by the Rules and Regulations of the Department of Air Pollution Control of the City of New York. Under these rules, volatile matter is defined as “ The gaseous constituent of fuels as determined by' standards of American Society for Testing Materials.” There can be no question concerning what these standards are, nor that the city failed to comply with them in taking the sample of coal for analysis as the basis of this prosecution. The department’s rules referred directly to designation D 980-53 of the American Society for Testing Materials, entitled “ Sampling and Analysis of Coal fob Volatile Matter Determination in Connection with Smoke Ordinances.” It was adopted in 1953. The scope is defined as covering ‘ ‘ the sampling and analysis of coal for volatile matter determination reported on the moisture- and ash-free basis in connection with smoke ordinances regarding permissible volatile matter content of solid fuels.” The paragraph entitled “ Procedure ” states: ‘ ‘ The content of volatile matter of a specific lot of coal shall be determined by analyzing a gross sample of not less than 90 lb., consisting of a minimum of nine increments, each increment weighing not less than 10 lb.”
The reason for this procedure is evidently to insure that the analysis of the sample will be representative of the bulk of the coal delivered. If not enough increments are taken — an increment being simply one shovelful of coal— and if the increments are not large enough in quantity, the person who collects the samples can cause the result of the test to be good or bad as he likes. There is certain to be some coal in the batch which is of better quality than the average and other that is worse. The purpose of the American Society for Testing Materials in'requiring a gross sample of not less than 90 pounds, consisting of a minimum of nine increments, each increment weighing not less than 10 pounds, was evidently to be sure that the sample would conform to the average quality of the coal delivery. Otherwise no useful purpose would be served in making* the test. That was the manifest object of the city’s Department of Air Pollution Control in prescribing this method. Unless the method is fol *48 lowed which the city has prescribed as essential to establish the alleged violation, the New York City Court of Special Sessions was clearly right in holding that the People fail to make out a prima facie case.
Even if the Department of Air Pollution Control were not to be held to its own standards and procedures and if other methods of testing were to be sanctioned, the respondent has not been proved guilty of this offense in view of the circumstance that the record is devoid of any evidence that the method of sampling which was pursued in this case furnishes a true index of the quality of the bulk of the coal that was delivered by respondent at the time and place specified.
The order appealed from should be affirmed.
Chief Judge Conway and Judges Desmond, Dye and Fuld concur with Judge Burke; Judge Van Voorhis dissents in an opinion in which Judge Froessel concurs.
Order reversed, etc.